## STEVENSON *v.* PARKER.

---

PATENTS; INTERFERENCE; DILIGENCE.

1. The party to an interference involving an invention relating to a box elevating and dumping machine for use in fruit packing establishments who was first to conceive the invention, and was diligently completing it when the other party entered the field, was held entitled to an award of priority.

2. The senior party to an interference involving the invention of a machine for use in packing fruits, who conceived the invention the year before the other party filed his application and entered the field, and in the year following his conception obtained an order for a machine, made the necessary drawings, and built a machine which was used when the fruit season opened that year in the autumn, was held not to be lacking in diligence. (Following *Woods* v. *Poor,* 29 App. D. C. 397, and *Lorimer* v. *Erickson,* 44 App. D. C. 503.)

No. 1094. Patent Appeals. Submitted March 13, 1917. Decided April 2, 1917.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.     *Affirmed.*

The facts are stated in the opinion.

*Mr. William W. Dodge, Mr. Frederick S. Lyon,* and *Mr. Parker Dodge* for the appellant.

*Mr. L. S. Bacon, Mr. J. H. Milans,* and *Mr. N. A. Acker* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This appeal is from the decision of the Commissioner of Patents awarding priority of invention to the senior party, George D. Parker.

The invention relates to a box elevating and dumping machine for use in fruit packing establishments. It is defined in the two counts of the issue, as follows:

"1. In a box elevating and dumping machine, the combination with a receiving table for the boxes to be elevated and dumped, of a continuously driven endless-chain carrier for the boxes, of means for delivering filled boxes onto the receiving table and within the sphere of the elevating chain carrier, devices coacting with and placed into operation by the chain carrier for swinging the boxes elevated and causing the tilting thereof for the emptying of the same of their contents, and means for receiving the fruit discharged from the elevated boxes and conveying the same to a suitable place of deposit.

"2. In a box elevating and dumping machine, the combination with a box receiving table for the boxes to be elevated and dumped, an endless carrier provided with box-holding devices for removing the boxes from the receiving table and elevating the same, means coacting with box-holding devices of the endless carrier for swinging the same to dump the contents therefrom, and means for receiving the dumped fruit and conveying the same to a suitable place of deposit."

The only difference between the counts is that count 1 calls for a mechanical delivery of the boxes to the receiving table, while count 2 calls for a manual delivery. The Examiner of Interferences and the Commissioner awarded priority as to both counts to Parker, while the Board of Examiners in Chief awarded priority as to count 2 to James W. Stevenson. Both constructed machines embodying the structure covered by the counts of the issue in the fall of 1911; both carried on their

work in neighboring factories in Riverside, California, and each party asserts that his opponent had opportunity in various ways to derive the invention from him.

It is agreed by the tribunals below, and properly, that Parker conceived the invention covered by both counts of the issue in 1910, received an order for a machine from the Riverside Heights Orange Growers' Association in April, 1911, began drawings in August, built a machine in the fall of 1911, which was installed in the Riverside Heights plant, and filed his application for a patent December 9, 1911.

Stevenson's operations were all in the summer and fall of 1911. He claims to have conceived the invention of count 2 about July 1st, and the improvement set forth in count 1 about August 1st. He also claims to have built a machine embodying count 2 in July, which he sold to the Lindsay Independent Packing Company, of Lindsay, California, on September 6th. He also installed a machine in a plant in Casa Blanca, California. Both of the machines were used successfully during the fruit packing season of 1911–1912. The season, it appears, opens in the early part of December. Stevenson also claims to have commenced the construction of a machine of the structure of count 1 about September 1st, and to have completed it about October 20th. This machine was exhibited at an orange show in San Bernardino, California, in February, 1912. As to this count 1 machine, the evidence is not clear as to Stevenson's dates; but, conceding his dates, Parker was diligently completing his invention when Stevenson entered the field. We agree with the tribunals below in awarding priority as to count 1 to Parker.

The Board of Examiners in Chief held that Stevenson had established a date of conception of the count 2 machine prior to August, 1911, when Parker began drawings for the construction of the machine for which he had received an order the previous April, and that Parker had been lacking in diligence between the date of conception in 1910 and August, 1911. Stevenson, having entered the field while Parker was inactive,

and having reduced to practice prior to Parker, was held to be entitled to prevail as to the count 2 machine.

We are not in accord with the holding of the Board on this point. While the dates established by the respective parties are exceedingly close, we are not inclined to charge Parker with lack of diligence. Besides, it is by no means clear that Stevenson was in the field even with conception of the count 2 machine when Parker began his drawings. On the question of Parker's diligence, we agree with the Assistant Commissioner, that "the testimony clearly shows that Parker had a conception of the invention as early as 1910, and that he received an order in March or April, 1911, for the installation of one of the machines in a fruit packing establishment. It also appears from the testimony that this machine could not be put into use until late in the fall, after the gathering of oranges had commenced. Under these circumstances it would appear that Parker did all that could be reasonably required of him. He had obtained an order for the building of a trial machine, which was to be used when the season opened, and he commenced work on the drawings of the machine at such a time that the machine could be installed according to his contract, and it was installed and used." In this view of the case Parker is entitled to priority, even conceding that Stevenson entered the field, as he contends, in July. *McCormick Harvesting Mach. Co.* v. *Minneapolis Harvester Works,* 42 Fed. 152; *Woods* v. *Poor,* 29 App. D. C. 397; *Lorimer* v. *Erickson,* 44 App. D. C. 503.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings, as by law required.　　　　　　　　　　　　　　　　　*Affirmed.*